# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

ROBERTO C. GONZALEZ,
             Appellant,

       v.

DEPARTMENT OF EDUCATION,
             Agency.

DOCKET NUMBER
SF-0752-15-0541-I-1

DATE: April 19, 2023

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Lawrence Berger</u>, Esquire, Glen Cove, New York, for the appellant.

<u>Ruby Len</u>, Esquire, Washington, D.C., for the agency.

### BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

### FINAL ORDER

¶1      The agency has filed a petition for review of the initial decision, which sustained a charge of failure to follow instructions, did not sustain charges of conduct unbecoming a Federal law enforcement officer and lack of candor, and mitigated the removal penalty to a 14-day suspension. For the reasons discussed

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

below, we GRANT the agency's petition for review. We AFFIRM the initial decision insofar as it sustained the failure to follow instructions charge. We REVERSE the initial decision insofar as it did not sustain the conduct unbecoming a Federal law enforcement officer charge, and FIND INSTEAD that the agency proved specification 3 of the conduct unbecoming charge and the charge itself. We also VACATE the administrative judge's penalty determination and REINSTATE the penalty of removal.

## BACKGROUND

¶2      The appellant was employed as a Criminal Investigator with the agency's Office of Inspector General (OIG) in its regional office in Long Beach, California. Initial Appeal File (IAF), Tab 16 at 31. On January 25, 2014, there was an altercation between the appellant, his wife, and his stepdaughter at their home. IAF, Tab 17 at 30-31. Shortly thereafter, the appellant's stepdaughter and son left the home, and his son called 911 from a nearby store to report that there had been a fight at his home between his father and stepsister. *Id*. at 31. The appellant left the home to locate his son, and, while driving, he passed a police car. *Id*. at 48. The appellant did not return home that evening. *Id*.

¶3      On January 29, 2014, the Los Angeles County Sheriff's Department (LASD) obtained a felony arrest warrant for the appellant on charges of willful cruelty to a child, spousal battery, and child abandonment. *Id*. at 73-75. The appellant voluntarily surrendered at the local police station and was released on bond without charges being filed. IAF, Tab 18 at 61-62. The next day, the agency placed the appellant in a nonduty, paid status because of the ongoing LASD inquiry. IAF, Tab 17 at 96.

¶4      In March 2014, the Los Angeles County District Attorney's Office filed a criminal complaint that included two misdemeanor charges, battery and cruelty to a child by inflicting injury, to which the appellant pled not guilty. *Id*. at 77-79, 81. The court issued a criminal protective order, which, among other things, prohibited the appellant from having any personal, electronic, telephonic, or

written contact with his wife and stepdaughter and from coming within 100 yards of them. *Id*. at 86-87. The protective order was later modified to reduce the stay-away distance between the appellant and his wife to 100 feet when he dropped off their minor daughter at their home. *Id*. The stay-away and no contact provisions also were modified to allow the appellant to engage in counseling and spiritual guidance with his wife. *Id*.

¶5    In June 2014, the agency indefinitely suspended the appellant because it had reasonable cause to believe he had committed a crime for which a sentence of imprisonment could be imposed. *Id*. at 115-22. On August 25, 2014, the District Attorney's Office announced that it was unable to proceed with the trial against the appellant, and the court dismissed the charges and terminated the protective order. *Id*. at 84.[2]

¶6    OIG's Quality and Integrity Group (QIG) subsequently opened an administrative investigation into the original incident. *Id*. at 30. In December 2014, QIG issued a Report of Investigation (ROI). *Id.* at 28-71. Relying on the results of the ROI, the agency issued a notice of proposed removal based on the following charges: (1) conduct unbecoming a Federal law enforcement officer (five specifications); (2) lack of candor (three specifications); and (3) failure to follow instructions (one specification). *Id*. at 5-26. The appellant responded orally and in writing to the proposal notice. IAF, Tab 16 at 67-69, 71-83. The agency issued a final decision that sustained all of the specifications except for one lack of candor specification, sustained all three charges, and removed the appellant from Federal service. *Id*. at 33-51. The appellant filed a timely appeal with the Board, and a hearing was held. IAF, Tabs 1, 30, 33-34; Hearing Transcripts. The administrative judge issued a

---

[2] The Board affirmed the administrative judge's decision to reverse the continuation of the indefinite suspension after this date. *Gonzalez v. Department of Education*, MSPB Docket No. SF-0752-15-0031-I-1, Final Order (Apr. 21, 2015).

45-page initial decision sustaining only the failure to follow instructions charge and mitigating the removal penalty to a 14-day suspension. IAF, Tab 40, Initial Decision (ID).

¶7　　　The agency has filed a petition for review, and the appellant has filed a response. Petition for Review (PFR) File, Tabs 1, 3. In its petition, the agency challenges the administrative judge's findings concerning specifications 1-3 of the conduct unbecoming charge and specification 2 of the lack of candor charge.[3] PFR File, Tab 1 at 6-28. The agency also has certified its compliance with the interim relief order. *Id*. at 30-36.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶8　　　Generally, an agency is required to prove its charges in an adverse action appeal by preponderant evidence. 5 U.S.C. § 7701(c)(1)(B). A preponderance of the evidence is that degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue. 5 C.F.R. § 1201.4(q).

The agency proved the charge of conduct unbecoming a Federal law enforcement officer by preponderant evidence.

¶9　　　A charge of conduct unbecoming a Federal law enforcement officer is a generic charge and has no specific elements of proof; it is established by proving that the appellant committed the acts alleged in support of the broad label. *Canada v. Department of Homeland Security*, 113 M.S.P.R. 509, ¶ 9 (2010). The agency also must prove that the conduct was unattractive, unsuitable, or detracted

---

[3] Neither party has challenged the administrative judge's finding that the agency proved the failure to follow instructions charge by preponderant evidence. PFR File, Tabs 1, 3; ID at 30-32. We have reviewed the record, and we discern no basis to disturb that finding. *See Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 106 (1997) (finding no reason to disturb the administrative judge's findings when she considered the evidence as a whole, drew appropriate inferences, and made well-reasoned conclusions); *Broughton v. Department of Health and Human Services*, 33 M.S.P.R. 357, 359 (1987) (same).

from the appellant's character or reputation. *Miles v. Department of the Army*, 55 M.S.P.R. 633, 637 (1992). As explained below, we find that the agency proved specification 3 and the charge of conduct unbecoming a Federal law enforcement officer by preponderant evidence.

¶10 In conjunction with the criminal matter, the court issued a protective order which stated, in pertinent part:

> 10. [The appellant] must have no personal, electronic, telephonic, or written contact with [his wife and stepdaughter].
>
> 11. [The appellant] must have no contact with [his wife and stepdaughter] through a third party, except an attorney of record.
>
> 12. [The appellant] must not come within 100 yards of [his wife and stepdaughter].

IAF, Tab 17 at 86-87. Subsequently, the court modified the protective order as follows: "Exception to 12: 100 ft. when [the appellant] is bringing [the couple's 5-year-old] child home. Exception to 10, 11, 12: Counseling at Carritos Psychological Center and Parkcrest Church, as it applies to [wife]." *Id*. at 86-87, 124-36.

¶11 Specification 3 of the conduct unbecoming charge alleged that between April 22, 2014, and August 24, 2014, there were 5,025 records of communication (primarily voice and text messages) between the appellant and his wife in violation of the protective order.[4] *Id*. at 8-10. In the initial decision, the administrative judge noted that 1,749 of the communications originated from the appellant's wife's cell phone, so those communications did not violate the

---

[4] In addition to the 5,025 communications discussed herein, the agency alleged in the proposal notice that the appellant, in violation of the protective order, contacted his wife's employer 163 times, he contacted the residence that he shared with his wife 80 times, and he contacted another residence that he and his wife rented 73 times. *Id*. at 10. Because we conclude that the agency proved by preponderant evidence that the appellant engaged in conduct unbecoming as described in specification 3 by his more than 1,400 communications with his wife in violation of the protective order, we need not separately analyze these additional communications.

protective order.[5]  ID at 18.  The administrative judge credited the appellant's testimony that he was responsible for picking up and dropping off their 5‑year‑old daughter each day and that this schedule varied, necessitating additional communication with his wife to coordinate schedules.  *Id.*  The administrative judge also credited his testimony that, as part of his counseling and spiritual guidance, he and his wife were required to communicate regularly with each other.  *Id.*  The administrative judge found that it would "seem difficult, if not impossible, for the agency to identify with any reasonable degree of certainty which communications violated the order."  ID at 19.  She further found that, absent evidence of the content of any communications, the agency's attempt to "conjure authorized versus unauthorized communications" was insufficient to meet its burden to prove that the appellant violated the protective order.  *Id.*

¶12      On review, the agency argues that the administrative judge's findings should have been based on the language of the protective order itself—which did not permit the broad communications described by the appellant—instead of the appellant's belief regarding what communications were necessary.  PFR File, Tab 1 at 16-17.  The agency alternatively asserts that the appellant's interpretation of the protective order is improbable and not supported by the record.  *Id.* at 16-20.  We agree with the agency that the language of the protective order is clear, and the administrative judge improperly interpreted the protective order and its exceptions in evaluating specification 3 and the conduct unbecoming charge.

---

[5] We believe that there is a typographical or mathematical error in the initial decision. The administrative judge identified 1,749 communications that were initiated by the appellant's wife, but it appears that it should be 1,729 communications.  *See* IAF, Tab 17 at 63 (noting that 3,296 of 5,025 communications were initiated by the appellant).  However, an adjudicatory error that is not prejudicial to an appellant's substantive rights provides no basis for reversal of the initial decision.  *Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984).

¶13     As noted above, the protective order clearly and unambiguously sets forth the applicable stay-away and no contact provisions and the limited exceptions thereto. The proposal notice documented the high volume of communications that violated the protective order. Even after excluding communications between the appellant and his wife on Wednesdays and Sundays (the days that they were scheduled to have counseling and spiritual guidance) and on weekdays between 4:00-6:00 p.m., the times that the appellant was scheduled to drop off the minor child,[6] the agency identified in the proposal notice 3,201 communications that violated the protective order. IAF, Tab 17 at 10.

¶14     The agency challenges the administrative judge's findings regarding communications that originated from the appellant's wife's cell phone. PFR File, Tab 1 at 19. For example, the administrative judge noted in the initial decision that there was no evidence that the appellant engaged in any harassing or threatening behavior towards his wife during these communications. ID at 19. She also noted that the significant number of communications initiated by the wife reflected that she did not feel harassed by him or wished to avoid communications. *Id.* We agree with the agency that there is no basis in the record to support these findings. PFR File, Tab 1 at 19.

¶15     Even if, for the purposes of our analysis, we subtracted 1,729 communications that originated from the appellant's wife's cell phone from the remaining 3,201 communications, there were still 1,472 communications that originated from the appellant that fell outside of the scope of the protective order's exceptions. *Id.* at 9-10. Importantly, as noted by the administrative

---

[6] The administrative judge's decision to credit the appellant's testimony regarding his belief about the appropriateness or necessity of communications with his wife is not relevant to our assessment of whether the agency proved specification 3. Rather, the plain language of the protective order, and the exceptions thereto, mandates the conclusion that the agency proved that the appellant violated the protective order more than 1,400 times over a 4-month period and engaged in conduct unbecoming.

judge, the appellant has not disputed the accuracy of the agency's data, ID at 17-18, and we discern no basis from the record to question that accuracy. Based on the foregoing, we find that the agency proved by preponderant evidence that the appellant violated the protective order more than 1,400 times as charged in specification 3 and engaged in conduct unbecoming a Federal law enforcement officer.[7]  Because proof of one specification is sufficient to sustain the charge, *see Burroughs v. Department of the Army*, 918 F.2d 170, 172 (Fed. Cir. 1990), we also sustain the conduct unbecoming charge.[8]

<u>We find that the agency has proven nexus, and we reinstate the penalty of removal.</u>

¶16    In addition to proving the charges by preponderant evidence, the agency must also establish the existence of a nexus between the charged misconduct and the efficiency of the service, and it must prove that the penalty of removal is reasonable.  5 U.S.C. § 7513(a); *Shibuya v. Department of Agriculture*, 119 M.S.P.R. 537, ¶ 18 (2013); *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-08 (1981).  In the initial decision, the administrative judge found a nexus between the efficiency of the service and the failure to follow instructions charge, the only charge she sustained.  ID at 32-33.  Because she did not sustain all the charges, she re-evaluated the penalty and found that the maximum

---

[7] The agency does not challenge the administrative judge's decision not to sustain specifications 4 and 5 of the conduct unbecoming charge, PFR File, Tab 1 at 5; ID at 20-24, and we discern no error with her findings in this regard.  Also, because we have sustained specification 3 and the conduct unbecoming charge, we need not address the remaining specifications that the agency challenged on review.  PFR File, Tab 1 at 6-16.

[8] In light of our decision to sustain specification 3 of the conduct unbecoming a Federal law enforcement officer charge and the charge itself, we need not address the agency's arguments on review regarding specification 2 of the lack of candor charge.  PFR File, Tab 1 at 21-28.  As explained below, the penalty of removal can be sustained based on the conduct unbecoming and failure to follow instructions charges.

reasonable penalty for the sustained misconduct was a 14-day suspension, and she mitigated the penalty. ID at 33-36.

¶17 Because we have, in this order, reversed the administrative judge's findings regarding the charge of conduct unbecoming a Federal law enforcement officer, we must re-evaluate nexus and the reasonableness of the agency's chosen penalty of removal.

*Nexus*

¶18 The nexus requirement, for purposes of whether an agency has shown that its action promotes the efficiency of the service, means there must be a clear and direct relationship between the articulated grounds for an adverse action and either the employee's ability to accomplish his or her duties satisfactorily or some other legitimate Government interest. *Merritt v. Department of Justice*, 6 M.S.P.R. 585, 596 (1981), *modified on other grounds by Kruger v. Department of Justice*, 32 M.S.P.R. 71, 75 n.2 (1987). We agree with the administrative judge that the agency established nexus with respect to the failure to follow instructions charge. *See Archerda v. Department of Defense*, 121 M.S.P.R. 314, ¶ 24 (2014) (stating that an employee's failure to follow instructions relates directly to the efficiency of the service). Regarding the charge of conduct unbecoming a Federal law enforcement officer, the sustained specification relates to the appellant's violation of the protective order and involves off-duty misconduct.[9] IAF, Tab 17 at 8-10. The Board generally recognizes three means by which an agency may show a nexus between an employee's off-duty misconduct and the efficiency of the service: (1) a rebuttable presumption of nexus may arise in certain egregious

---

[9] The record reflects that the appellant was placed in a nonduty, paid status on January 30, 2014, and the agency continued the appellant in this status until it indefinitely suspended him on June 29, 2014. IAF, Tab 17 at 96, 103, 115-22. As noted *supra* ¶ 5 n.2, the Board determined that the indefinite suspension should have ended on August 25, 2014. Given this chronology, the standard for evaluating nexus in the context of off-duty misconduct is appropriate here.

circumstances based on the nature and gravity of the misconduct; (2) a showing by preponderant evidence that the misconduct adversely affects the appellant's or coworkers' job performance or the agency's trust and confidence in the appellant's job performance; and (3) a showing by preponderant evidence that the misconduct interfered with or adversely affected the agency's mission. *Kruger*, 32 M.S.P.R. at 74.

¶19 In the decision notice, the deciding official explained that, as a Federal law enforcement officer, the appellant held a position of trust and the public expects that he will be trustworthy and act with integrity at all times. IAF, Tab 16 at 42. He stated that he lost confidence in the appellant's ability to perform his law enforcement duties. *Id.* at 46. He also stated that he did not believe that the appellant's superiors in OIG could confidently assign casework to him knowing that he engaged in conduct unbecoming a Federal law enforcement officer, including violating a protective order and failing to follow instructions. *Id.* Based on the foregoing, the agency has proven that the misconduct adversely affects the agency's trust and confidence in the appellant's job performance, and it established nexus in this regard.

*Penalty*

¶20 The Board will review an agency-imposed penalty only to determine if the agency considered all the relevant factors and exercised management discretion within the tolerable limits of reasonableness. *Douglas*, 5 M.S.P.R. at 306. When, as here, not all of the agency's charges are sustained, the Board will consider carefully whether the sustained charges merited the penalty imposed by the agency. *Id.* at 308.

¶21 When evaluating whether a penalty is reasonable, the Board considers, first and foremost, the nature and seriousness of the misconduct and its relation to the employee's duties, position, and responsibilities. *Jackson v. Department of the Army*, 99 M.S.P.R. 604, ¶ 6 (2005). The sustained charges, conduct unbecoming and failure to follow instructions, are serious. *Hernandez v. Department of*

*Agriculture*, [83 M.S.P.R. 371](link), ¶¶ 2, 9 (1999); *Hellein v. Department of Agriculture*, [8 M.S.P.R. 373](link), 375 (1981).  The Board has long recognized that a higher standard of conduct and degree of trust are required of an incumbent of a position with law enforcement duties, such as the appellant.  *Cantu v. Department of the Treasury*, [88 M.S.P.R. 253](link), ¶ 8 (2001).  Further, as explained by the deciding official, the appellant holds a position of public trust and "[a]t the very least, the public expects that a person sworn to enforce the laws of the United States will also follow the law."  IAF, Tab 16 at 42.  Moreover, the appellant's violations of the protective order, as discussed above, were repeated more than 1,400 times over a 4-month period.  Additionally, as discussed in the nexus analysis, the proposal notice and decision letter reflect the concern that the agency lost confidence in the appellant's ability to perform his law enforcement duties.  IAF, Tab 16 at 45-46, Tab 17 at 18-19.  We have considered as mitigating factors the appellant's 14 years of service with strong performance ratings and no prior discipline.  We also acknowledge that the appellant was in counseling following the incidents described in the proposal notice.  However, none of these mitigating factors—or any other penalty factors that we have considered— outweigh the nature and seriousness of the sustained offenses, and we find that the agency's chosen penalty of removal was reasonable.

## NOTICE OF APPEAL RIGHTS[10]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter.  [5 C.F.R. § 1201.113](link).  You may obtain review of this final decision.  [5 U.S.C. § 7703](link)(a)(1).  By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.  [5 U.S.C. § 7703](link)(b).  Although we offer the following

---

[10] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions.  As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the

EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**. This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[11] The court of appeals must <u>receive</u> your petition for

---

[11] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on

review within **60 days** of the <u>date of issuance</u> of this decision. <u>5 U.S.C. § 7703</u>(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:          /s/ for
                                        Jennifer Everling
                                        Acting Clerk of the Board

Washington, D.C.